**BROWN WHOLESALE ELECTRICAL CO., INC., The United States of America for the use and benefit of, dba Excel Electrical Supply Company, Plaintiff–Appellee,**

v.

**TRUSTEES OF THE HAWAII ELECTRICIANS ANNUITY, Health and Welfare, Pension, Training, Vacation and Holiday, Prepaid Legal, Hawaii Electricians Market Enhancement Program and Supplementary Unemployment Benefits Funds, by and through their Fund Manager, Fred Kinumatsu, fka PECA–IBEW, Intervenor–Appellant,**

Utah Construction & Development, Inc.; National Fire Insurance of Hartford; TW Electrical Services, Inc.; Tsuneo Watanabe, Defendants.

No. 98–16114.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 27, 1999.

Decided June 10, 1999.

Wesley H. Ikeda, Tam, O'Connor & Henderson, Taira & Yamauchi, Honolulu, Hawaii, for the intervenor-appellant.

Ronald G.S. Au, Honolulu, Hawaii, for the plaintiff-appellee.

Before: FARRIS, NOONAN, and GRABER, Circuit Judges.

FARRIS, Circuit Judge:

The Trustees of the Hawaii Electricians Trust Funds appeal from the dismissal of their claims against Excel Electrical Supply Co. We reverse.

## BACKGROUND

Utah Construction & Development was the general contractor for the Hawaii Job Corps Center federal construction project. Pursuant to the Miller Act, 40 U.S.C. § 270a(a)(2), Utah Construction furnished the United States with a payment bond, issued by National Fire Insurance of Hartford, that protected all persons providing materials and equipment for the project. Utah Construction subcontracted with TW Electrical for the project's electrical work, and TW Electrical in turn hired Excel Electrical to furnish material.

TW Electrical financed its purchase of material from Excel under a "joint check agreement." Under that agreement, TW Electrical granted Excel a purchase money security interest in the material and its "product and/or proceeds." Also, TW Electrical ordered Utah Construction to "make all checks in payment of sums due it on the job jointly to [TW Electrical and Excel]." Excel never filed a financing statement on its security interest in the electrical material and its proceeds.

In the course of the project, Excel furnished $568,500 worth of supplies. However, it received only about $133,000 under the joint check agreement. On February 13, 1996, Excel brought this action against Utah Construction, National Fire Insur-

ance, TW Electrical, and Tsuneo Watanabe, the owner of TW Electrical, to recover the balance due. This amounted to roughly $440,000. The complaint sought (1) compensation on the payment bond under the Miller Act, 40 U.S.C. § 270b(a); and (2) damages for breach of contract from TW Electrical and Watanabe.

On March 19, 1996, the Trustees of the Hawaii Electricians Trust Funds obtained an unrelated judgment against TW Electrical and Watanabe for their failure to make certain trust fund contributions. The judgment amounted to $218,570.86 plus interest. In an effort to collect that judgment, the Trustees served a garnishee summons on Utah Construction on June 26, 1996. Utah Construction was holding $412,272.78 in "retention funds" due on the project's electrical work.

On August 6, 1996, Utah Construction, TW Electrical, and Excel reached a partial settlement in Excel's suit. Excel dropped its claims against Utah Construction, and Utah Construction agreed to deposit the retention funds with the court.[1] At this point, only TW Electrical and Excel remained involved in the suit. On August 9, 1996, Utah Construction filed a disclosure in response to the Trustees' garnishee summons. The disclosure stated that Utah Construction was not "indebted" to TW Electrical. At the same time, it acknowledged that Utah Construction planned to relinquish the retention funds so the court could determine the rights thereto.

On December 23, 1996, the Trustees were granted leave to intervene in Excel's suit. On May 8, 1997, the Trustees moved to release $110,374.66 plus interest[2] from the court account. The court denied the motion. On September 9, 1997, TW Electrical and Watanabe disclaimed any right to the disputed funds. On September 15, 1997, Excel moved to release the funds to it. The court granted the motion, and it entered final judgment on May 19, 1998. The Trustees timely appealed.

## STANDARD OF REVIEW

This appeal presents questions of law that we review *de novo*. *See Mount Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1571 (9th Cir.1993).

## DISCUSSION

### I. Do the Trustees Have Standing to Claim Any of the Retention Funds?

■ The court stated that "[the Trustees] have no interest in the merits or settlement of the present case.... It is uncontested that no part of the money owed to the [Trustees] ... arose out of the Hawaii Job Corps project." It concluded that the Trustees lacked standing to claim any of the retention funds.

Excel adopts this argument on appeal. It relies heavily on *United States ex rel. Wulff v. CMA, Inc.*, 890 F.2d 1070 (9th Cir.1989). In *Wulff*, CMA, the prime contractor, hired B & K Fabricators to build a smokestack for a federal construction project. In the meantime, Wulff obtained an unrelated judgment against B & K in state court. To recover this money, Wulff sought to garnish the money that CMA owed to B & K for the smokestack. CMA refused to pay, so Wulff sued CMA and the surety under the Miller Act. Because Wulff's prior judgment was "not based on any activity associated with the federal construction project," Wulff could not bring a Miller Act claim. *Id.* at 1073.

Excel argues that *Wulff* controls. It points out that the Trustees' judgment against TW Electrical was unrelated to the Hawaii Job Corps project. The Trustees note that, unlike Wulff, they did not sue

---

1. Utah Construction and TW Electrical also dropped their claims against each other.

2. Apparently, TW Electrical or Watanabe had paid off about $108,000 of the outstanding judgment before the trustees filed this motion; $110,374.66 represented the balance.

under the Miller Act. Rather, they intervened in Excel's suit with a claim under Hawaii's version of the UCC.

Wulff is inapplicable. The Trustees did not sue directly under the Miller Act. More importantly, the retention funds were not derived from the payment bond. Had Utah Construction paid off this money in the ordinary course of business, the joint check agreement would have applied. Thus, the Trustees have standing to assert their claim.

## II. Does Article 9 of the UCC Govern the Joint Check Agreement?

■ The Joint Check Agreement contains the following provision:

BUYER DOES HEREBY GRANT AND SELLER DOES HEREBY RETAIN A PURCHASE MONEY SECURITY INTEREST IN EACH AND EVERY ITEM OF MATERIAL SO FURNISHED WHEREVER LOCATED AND ITS PRODUCT AND/OR PROCEEDS. THIS AGREEMENT SHALL BE DEEMED A SECURITY AGREEMENT IN ACCORDANCE WITH THE PROVISIONS OF THE UNIFORM COMMERCIAL CODE.

Hawaii's version of UCC Article 9 is codified at HRS § 490:9–101 et seq. HRS § 490:9–102(1) states that, subject to certain exceptions, Article 9 applies "(a) to any transaction ... which is intended to create a security interest in ... goods ... or accounts ...; and also (b) to any sale of accounts...." The Trustees argue that the joint check agreement creates a security interest in accounts or involves the sale of accounts. They are mistaken. The agreement granted a purchase money security interest in goods, i.e., the electrical materials, and their proceeds, which were the accounts receivable from Utah Construction. In any event, the parties clearly structured the agreement as a commercial financing arrangement governed by Article 9.[3]

## III. Who Had Priority over the Funds in the Court's Account?

■ Excel never filed a financing statement on the joint check agreement. Thus, its security interest is unperfected. See HRS § 490:9–302. The Trustees claim that they are a lien creditor by virtue of the garnishment action against Utah Construction. See HRS § 490:9–301(3) ("A 'lien creditor' means a creditor who acquired a lien on the property involved by attachment, levy or the like....."). HRS § 490:9–301(1)(b) provides that a lien creditor takes priority over an unperfected security interest.

■ Excel argues that the Trustees are not a lien creditor because "there was never a valid garnishment claim or lien levied against the ... funds." Under Hawaii's garnishment statute, a garnishee must secure and pay to the plaintiff "any debt then owing from the garnishee to the defendant." HRS § 652–1(a). Excel points out that in Utah Construction's garnishee disclosure, it expressly denied being "indebted" to TW Electric. This denial, Excel argues, invalidates the Trustees' lien on the retention funds.

■ Excel's argument is misplaced. A garnishee's denial of indebtedness is not decisive if the undisputed facts show that it is legally erroneous. See Honolulu Constr. & Draying Co. v. Terrace Developers, Ltd., 48 Haw. 68, 395 P.2d 691, 697 (1964). That is the case here. Utah Construction subcontracted with TW Electrical to provide the project's electrical work. Since the retention funds represented payment for this work, they were owed to TW Electrical. Although the joint check agreement required these funds to be payable jointly to TW Electrical and Excel,

---

**3.** Excel does not dispute that the joint check agreement created a security interest. Instead, it argues that this question is "immaterial" because of the standing issue and the garnishment issue discussed infra.

this did not change the underlying debt on the subcontract into a debt to Excel.

Moreover, Utah Construction's denial of indebtedness does not jibe with its accompanying admission that "no ruling has been made as to [whether TW Electric or Excel] is entitled to the retention funds." Nor does it comport with its characterization of the retention funds in correspondence with Excel: "Utah Construction has retention funds which would be due to TW except for the claims of suppliers, subcontractors of TW and a garnishment." Therefore, Utah Construction was indebted to TW Electric for the purposes of HRS § 652–1.

■ Since Utah Construction was indebted to TW Electric, the Trustees' garnishment of the retention funds was valid. When the Trustees served the garnishee summons, they became a lien creditor with priority over Excel's unperfected security interest arising from the joint check agreement. *See* HRS § 652–2 ("in all cases in which the garnishee is summoned after judgment, the garnishee fund … shall be liable to pay the same") and HRS § 490:9–301(1)(b).

### IV. *The Trustees' Alternative Claim for $58,915.49*

Since we hold that Excel is liable for the entire amount requested by the Trustees, we need not address their alternative claim for $58,915.49.

### CONCLUSION

Although Excel stated a claim under the Miller Act, the funds at issue represent retained payments under the joint check agreement, not proceeds of the payment bond. Article 9 governs the priority over these retention funds. Utah Construction's denial of indebtedness was legally erroneous. Thus, the Trustees' garnishment of the retention funds was valid, and

it ensured their priority over Excel's unperfected security interest.

REVERSED.

